IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 1:15-CV-0360-LG-RHW |
| v. | ) ) | |
| WORKPLACE STAFFING SOLUTIONS, L.L.C., | ) ) ) | |
| Defendant. | | |

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

Plaintiff, Equal Employment Opportunity Commission ("EEOC" or "the Commission") seeks a default judgment against Defendant, Workplace Staffing Solutions, L.L.C. ("Defendant"), pursuant to Rule 55(b)(1) and (2) of the Federal Rules of Civil Procedure, in the total amount of $179,000 for the benefit of six victims of blatant, intentional sex discrimination. The Clerk of Court entered a default against Defendant on February 19, 2016. (Doc. 8). This Memorandum is submitted in support of the EEOC's Motion for Default Judgment.

On October 26, 2015, EEOC filed its Complaint against Defendant alleging violations of Title VII of the Civil Rights Act of 1964, as amended, U.S.C. 2000e et seq. (Doc.1). The Complaint alleged Defendant subjected Walton and a class of at least 33 women who applied or were deterred from applying for temporary residential trashcan collector ("RTCC") positions in the Harrison County, Mississippi area to discrimination on the basis of sex. (*Id*.). The Complaint sought (among other things) back pay, non-pecuniary compensatory damages, and punitive damages. (*Id*.). A process server contracted by EEOC served the summons and complaint on the Defendant by delivering a copy personally to Defendant's owner, Mr. Kirk St. Pierre, on January

1

25, 2016. (Doc. 4). Defendant failed to answer or otherwise defend against Plaintiff's Complaint, and the Clerk of Court entered a default against Defendant on February 19, 2016. (Doc. 8). EEOC now seeks a default judgment for the benefit of six victims who have submitted supporting Declarations.

## I. SUMMARY OF RELEVANT FACTS

A. *Jonika Walton and the EEOC's Investigation*

In September and October, 2012, Defendant, a temporary employment agency, was advertising for open positions for employment with Defendant for temporary Residential Trashcan Collector (RTCC) positions in the Biloxi/Gulfport, Mississippi area. Charging Party Jonika Walton attempted to apply, but was deterred from applying and was not hired because of her sex (female). (Ex. H, ¶ 3).

On November 19, 2012, Ms. Walton filed a Charge of Discrimination with the EEOC alleging Defendant had failed to hire her because of her sex in violation of Title VII of the Civil Rights Act of 1964, as amended. (Ex. A, ¶ 3; Ex. B; Ex. H, ¶ 2).

The EEOC's investigation of Ms. Walton's charge revealed Defendant is a temporary staffing agency which, at the time of the events in question, had approximately 3,000 employees and offices in Louisiana, Mississippi, Texas, Oklahoma, Arkansas, and Alabama. Lisa Hayes, Defendant's Administrative Assistant, was Defendant's only non-temporary employee in its Gulfport, Mississippi office. (Ex. A, ¶ 6).

On or about September 20, 2012, Jonika Walton contacted Ms. Hayes and attempted to apply for the RTCC position. Lisa Hayes told her the position was a "male-only job." (Ex. H, ¶ 2). Ms. Hayes admitted to the EEOC during its investigation that Defendant hired approximately 100 males for the RTCC positions, and no females. (Ex. A, ¶ 7). She admitted she spoke to

several females about the position. She stated she did not recall telling anyone the position was "male only," but admitted she may have said that. (*Id.*) The assignment for those hired for the RTCC position lasted approximately three weeks. (*Id.* ¶ 9).

At the time Ms. Walton tried to apply for the RTCC position she had been unemployed for two months and was in a very bad financial situation. She was a single parent, and had a one year old baby. She had been forced to move in with her Mother. She had no income except for temporary government assistance. She was behind on the payments for the title loan for her vehicle, and was in danger of losing it. As a result of her lack of income resulting from Workplace Staffing's failure to hire her, her vehicle was repossessed the next month. (Ex. H, ¶ 5, 6, 12).

Ms. Walton was shocked and upset at how she had been treated by Workplace Staffing. She suffered mental anguish and emotional distress in the form of stress, depression, and sadness. She felt so upset and hurt that she cried several times in the days following the incident. She didn't eat for two to three days, and was so upset that she was unable to do any of her normal activities for several days. (Ex. H, ¶ 4, 9-12).

During its investigation the EEOC requested and received 26 written applications that Defendant had received at its Gulfport, Mississippi office from females from September 5, 2012 through October 12, 2012 seeking employment in "any position." (Ex. A, ¶ 8). These applications included applications from Janice Monteleone, Jerrica Stokes, April Edwards, Yvette Bouie, and Susan Spinks (Ex. C, D, E, F, and G),[1] who have submitted Declarations describing their attempts to obtain employment with Defendant, the discrimination they suffered, and the damages they suffered as a result of that discrimination.

---

[1] Each application contains a document witnessed by Lisa Hayes on the date the applicant applied, thus confirming the same employee (Lisa Hayes) who told Ms. Walton that the RTCC job was a "male only" job also took the application of these victims.

3

B. *Jerrica Stokes*

On September 26, 2012, Jerrica Stokes visited Defendant's office in Gulfport, Mississippi seeking employment in any position. She spoke with the only employee present, a female (Lisa Hayes) who told her "we only have industrial jobs that are usually for men." Ms. Stokes replied that was okay with her- that she just needed a job. Ms. Stokes filled out an application (Ex. D), but never heard back from anyone at Workplace Staffing. She was never offered a job by Workplace Staffing, and Workplace Staffing never placed her in any position. If she had been offered a short-term job as a laborer, collecting trashcans, she would have accepted such a job. (Ex. J, ¶ 4-7).

Ms. Stokes suffered mental and emotional anguish. At the time, she had been unemployed for five months and was in difficult financial circumstances. After Workplace Staffing failed to offer her any position, she was not able to find employment for more than a month. The loss of earnings and my inability to find a job, even a temporary job, made her feel stressed, anxious, and depressed. (Ex. J, ¶ 2, 8, 10).

C. *Janice Monteleone*

On October 11, 2012, Janice Monteleone visited the Workplace Staffing office in Gulfport, Mississippi looking for work. She would have accepted any opening; she needed a job desperately. She completed an employment application (Ex. C) and spoke with a female employee (Lisa Hayes) who told her all they had was a trash collecting job but it was "more of a job for a guy." A black female was there at the same time, and Hayes told the black female the same thing. The black female started screaming at Hayes about not being given the opportunity to be hired for the job, but to no avail. Monteleone felt discouraged from applying and did not

pursue that job further. She went back to Workplace Staffing almost every day to see if there were any available jobs, but was never offered a job. (Ex. I, ¶ 3-7).

As a result of the discrimination she suffered, she suffered mental and emotional anguish. The distress she felt was so severe it interfered with her ability to sleep. The loss of earnings and her inability to find a job, even a temporary job, made her feel stressed, nervous, anxious, and afraid. She also felt upset and humiliated because she felt she could do the job and was denied the job only because she was a female. (Ex. I, ¶ 9).

D. *April Edwards*

On September 12, 2012, April Edwards visited the Workplace Staffing office in Gulfport, Mississippi looking for work. She would have accepted any position. She completed an employment application (Ex. E) but was told there were no positions available. In the next several weeks, she called Workplace Staffing several times and inquired again about available positions. She was always told there were no positions available. If she had been offered a short-term position as a laborer, collecting trashcans, she would have accepted such a job. (Ex. K, ¶ 2, 4, 5, 6).

At the time Ms. Edwards had been unemployed for about 2 to 4 weeks, and was the sole source of support for her three young children. She had no income after losing her previous job. She had bills to pay, including for rent and a car payment. To note, the car for which she was making payment was her only source of transportation. . (Ex. K, ¶ 3).

As a result of the discrimination she suffered, she suffered mental and emotional distress and anguish. The loss of earnings, and her inability to find a job to support herself and her children, made her feel stressed, frustrated, worried, anxious, hurt, humiliated, depressed, and

afraid for the future. The distress she felt was so severe she could not sleep well at night. (Ex. K, ¶ 10).

E. *Yvette Bouie*

On October 9, 2012, Ms. Bouie visited the Workplace Staffing office in Gulfport, Mississippi with a female friend, looking for work. They had heard Workplace Staffing was hiring. Ms. Bouie was interviewed by a female employee, who told her about a job that was available collecting trash cans. She completed an employment application (Ex. F) listing "any" for the position she was seeking.. The female employee told her she had a couple of other applications and would get back with her, but never did. (Ex. L, ¶ 2, 4, 5).

Ms. Bouie called Workplace Staffing at least two times and inquired about the position. She was always told there was nothing available. She was not able to find employment until December, 2012 when she found a job on her own. (Ex. L, ¶ 5, 8).

At the time Ms. Bouie applied with Workplace Staffing, she had been unemployed for about three (3) months. She was a single mother with young children that she supported with the help of her grandmother. She had no income except food stamps and was concerned about losing the apartment she was renting. (Ex. L, ¶ 3).

As a result of the discrimination she suffered, she suffered mental and emotional distress and anguish. About one or two weeks after she applied at Workplace Staffing, she lost the apartment she lived in because she could not afford the rent. She was forced to move in with her mother. She could not assist her mother with her bills, and her mother's electricity was then cut off two times. She felt like less of a woman because she couldn't provide for her family. Her inability to find a job to support herself and her children made her feel upset, embarrassed, hurt, angry, worried, depressed, and stressed. The distress she felt was so severe she could not sleep

well at night, and she had stress headaches, and loss of appetite. The stress affected her relationship with her mother, causing arguments between them. (Ex. L, ¶ 10).

F. *Susan Spinks*

On October 8, 2012, Susan Spinks visited the Workplace Staffing office in Gulfport, Mississippi, specifically seeking a temporary job collecting trash cans. Her husband had been hired by Workplace Staffing in late September, 2012 for that same job, and he had told her they were still hiring additional people to do that work. (Ex. M, ¶ 2). She spoke with a female employee (Lisa Hayes), and told her she wanted to apply for the trashcan collecting job. Hayes allowed her to complete an employment application. Ms. Spinks was open to work in any job so she listed the position applied for as "open" and her shift preference as "open." She was not hired. Instead, Hayes told her, "When we have something we will let you know." (Ex. M, ¶ 4).

No one from the Workplace Staffing office ever called her. She called Workplace Staffing at least one time and Hayes again told her there was nothing available. She was never offered a job by Workplace Staffing. She continued to look for a job and applied for many jobs until around mid-December, 2012, when her husband found a job with Trinity Yachts. (Ex. M, ¶ 5-7).

At the time, Ms. Spinks, her husband and their three young children (1, 4, and 7 years old) were all living in one room in her Aunt's house until they could afford to live on their own. They were on food stamps and did not have enough money or income to live on their own. Her husband had lost his job as a mechanic in July, 2012, and Ms. Spinks was not working at that time because of her small children. They were desperate for more money to help pay their bills. (Ex. M, ¶ 3).

As a result of the discrimination she suffered, Ms. Spinks suffered mental and emotional distress and anguish for about two months, until her husband found the job at Trinity Yachts and their financial situation improved. The loss of earnings, and her inability to find a job to help support her family in a time of need, made her feel upset, hurt, discouraged, depressed, and stressed. She felt like no one would hire her, which hurt her self-esteem. She was worried, anxious, and stressed because she and her family could not afford to live on their own, they were very crowded at her Aunt's house, and her Aunt wanted them to move out. The distress she felt was so severe she had headaches at times for a period of two months, which she believes were caused by the stress. (Ex. M, ¶ 10).

## II. ARGUMENT

Plaintiffs who prevail in an action under Title VII, are entitled to a full range of relief, including to be "made whole" for injuries suffered as a result of unlawful employment discrimination. 42 U.S.C. §§ 2000e-5(g) and 2000e-16; *Franks v. Bowman Transp. Co.,* 424 U.S. 747, 763 (1976).

Under the Civil Rights Act of 1991 ("CRA of 1991"), a plaintiff may recover compensatory and punitive damages for a defendant's unlawful discrimination. 42 U.S.C. § 1981a(b). Compensatory damages under the CRA of 1991 includes mental or physical injury such as emotional pain, suffering, mental anguish, humiliation, embarrassment, or other harm resulting from the discriminatory conduct. 42 U.S.C. § 1981a(b)(3). For a company employing more than 500 employees, like Workplace Staffing, the maximum amount of compensatory and punitive damages available to each victim is $300,000.[2] 42 U.S.C. § 1981a(b)(3)(D).

---

[2] *42 U.S.C. § 1981a*(b)(3) refers to "compensatory damages" as "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses."

Here, the Commission seeks a modest award of compensatory damages for each victim ranging from $20,000 to $30,000. The evidence before the Court easily justifies such a modest award. Each victim describes in her Declaration how the blatant sex discrimination and denial of employment caused mental and emotional distress and anguish in the form of humiliation, stress, worry, and depression. Ultimately, for Jonika Walton it resulted in the repossession of her car and inability to provide for her one-year old baby. For Yvette Bouie, it caused her to lose her apartment and be unable to provide for her two young children.

This evidence easily justifies this request for mental and emotional distress. General compensatory damages (including damages for mental and emotional distress) "need not be proven with a high degree of specificity." *Ferrill v. The Parker Group, Inc.,* 168 F.3d 468, 476 (11th Cir. 1999). Such damages "may be inferred from the circumstances as well as proved by the testimony." *Gore v. Turner*, 563 F.2d 159, 164 (5th Cir. 1977). A plaintiff's testimony alone may be sufficient proof of mental damages. There is no requirement of medical or corroborating testimony. *Brady v. Fort Bend County*, 145 F.3d 691, 720 (5th Cir. 1998); *Giles v. General Elec. Co.,* 245 F.3d 474, 488 (5th Cir. 2001).

There is no exact standard for determining the amount of such damages. The task is simply to fairly compensate each victim for the harm she suffered. *See* Fifth Circuit Pattern Jury Instructions (Civil Cases), Instruction 11.14, at 212.

The evidence in this case is certainly sufficient to justify an award of at least $30,000, if not more, for mental and emotional distress. The Fifth Circuit has approved damage awards for mental and emotional distress which far exceed $30,000. *See, e.g., Giles v. General Elec. Co.,* 245 F.3d 474, 488 (5th Cir. 2001)(approving compensatory damage award of $150,000 where plaintiff was terminated in violation of ADA); *Forsyth v. City of Dallas,* 91 F.3d 769, 774 (5th

Cir.1996)(approving jury awards of $100,000 to one plaintiff and $75,000 to second plaintiff for emotional distress); *Williams v. Trader Publishing Co.,* 218 F.3d 481 (5th Cir.2000) (approving award of $100,000 for emotional distress in Title VII case where plaintiff was terminated because of her gender).

Likewise, other circuits have approved emotional distress awards far exceeding the amounts requests in this case. *See, e.g., Gagliardo v. Connaught Lab.,* 311 F.3d 565, 573 (3rd Cir. 2002) (upholding district court's denial of remittitur of jury verdict of $1.55 million for emotional pain and suffering under state disability discrimination statute); *Peyton v. DiMario*, 287 F.3d 1121, 1126-1128 (D.C. Cir. 2002)(upholding $300,000 in compensatory damages under Title VII after being reduced from $482,000 to reflect statutory cap); *Bolden v. Southeastern Pennsylvania Transportation Authority*, 21 F.3d 29, 33-34 (3rd Cir. 1994)(jury award of $250,000 for emotional distress in civil rights action not excessive); *Wilmington v. J.I. Case Co.,* 793 F.3d 909, 922 (8th Cir. 1986)($400,000 in compensatory damages for emotional distress in race discrimination discharge case not excessive); *Moorer v. Baptist Memorial Healthcare System*, 398 F. 3d 469, 485-86 (6th Cir. 2005)(award of $250,000 in emotional distress damages in ADA case not grossly excessive); *Lilley v. BTM Corp.,* 958 F.2d 746, 754 (6th Cir. 1992)($350,000 mental anguish award for age discrimination not excessive); *Rowe v. Hussmann Corp.,* 381 F.3d 775, 783 (8th Cir. 2004)($500,000 award for emotional distress not excessive in sexual harassment case); *Madison v. IBP, Inc.,* 330 F.3d 1051 (8th Cir. 2003) (affirmed award of $266,750 in emotional distress damages in sex and race discrimination case); *Zhang v. American Gem Seafoods, Inc.,* 339 F.3d 1020, 1040-41(9th Cir. 2003)(jury award of $223,155 in emotional distress damages upheld for discrimination based on national origin); *Passantino v. Johnson & Johnson Consumer Products, Inc.,* 212 F.3d 493, 513 (9th Cir.

2000)(upholding $1,000,000 compensatory emotional distress damage award in sex discrimination discharge case); *Bradshaw v. School Board of Broward County, Florida,* 486 F.3d 1205 (11th Cir. 2007)(jury award of $500,000 for compensatory damages in sexual harassment case, reduced to statutory cap of $300,000, upheld); *Bogle v. McClure*, 332 F.3d 1347 (11th Cir. 2003)(Court affirmed award of $500,000 in race discrimination case).

The CRA of 1981 provides for an award of punitive damages against a Defendant, like Workplace Staffing, who "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). An employer's conduct need not be "egregious" to satisfy this standard. *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 546 (1999).[3] A reckless disregard of an individual's federally protected rights means "a serious disregard for the consequences of [one's] actions." *Goldsmith v. Bagby Elevator Co., Inc*., 513 F.3d 1261, 1280 (11th Cir. 2008), quoting *Ferrill v. The Parker Group, Inc.,* 168 F.3d 468, 476 (11th Cir. 1999). Punitive damages can be awarded in Title VII cases even if no compensatory damages are awarded. *Abner v. Kansas City Southern R. Co.*, 513 F.3d 154, 160 (5th Cir. 2008).

Punitive damages are damages designed to punish a defendant and to deter similar conduct in the future. *See* Fifth Circuit Pattern Jury Instructions (Civil Cases), Instruction 11.14, at 212. Among the factors to be considered in determining the amount of such damages to be assessed are how reprehensible Defendant's conduct was, whether the harm suffered was physical or economic or both, whether there was repetition of the wrongful conduct, and how much harm the conduct caused the victims. *Id*. at 214.

---

[3] While *Kolstad* establishes a "good faith" exception where a defendant establishes the prohibited conduct was contrary to its good faith efforts to comply with Title VII, there is no evidence in the record of any such efforts in this case. There is only evidence of blatant intentional sex discrimination by the only employee in Defendant's Biloxi office.

Here, Defendant's conduct was highly reprehensible- it was blatant and intentional. It was repeated- the complaint alleges Defendant passed over at least 33 qualified females for no reason other than their sex, and that allegation has not been denied, but instead is to be accepted as true. The Declarations of six victims are before the Court. The harm caused the victims was both economic and physical in nature, and severe enough to manifest itself in physical symptoms.

The Fifth Circuit has approved punitive damage awards far in excess of the $5,000 per victim amount requested here. *See, e.g., EEOC v. Service Temps Inc.,* 679 F.3d 323, 337-38 (5th Cir. 2012)(where defendant violated ADA by refusing to allow hearing-impaired individual to apply for warehouse job, Fifth Circuit approved punitive damage award of $68,800); *Deffenbaugh-Williams v. Wal-Mart Stores, Inc*., 188 F.3d 278, 286 (5th Cir. 1999)(Fifth Circuit approved punitive damage award of $75,000 in Title VII action where white female was terminated because she was dating a black male); *Rubinstein v. Administrators of Tulane Educational Fund,* 218 F.3d 392 (5th Cir. 2000)(Fifth Circuit approved punitive damage award of $25,000 in Title VII retaliation where only $2,500 in compensatory damages was awarded); *Forsyth v. City of Dallas,* 91 F.3d 769, 774 (5th Cir.1996)(award of exemplary damages of $125,000 not excessive). In fact, an award of punitive damages that is less than the amount of actual damages awarded is per se not excessive. *See Forsyth,* 91 F.3d at 774-75 (5th Cir.1996).

### III. CONCLUSION

For all the reasons stated in this Memorandum and the Commission's Motion for Default Judgment, the Court is requested to enter a default judgment against Defendant in the total amount of $179,000 (representing $1,500 in back pay for each victim), compensatory damages

for each victim ranging from $20,000 to $30,000 (see Exhibit N, the EEOC's proposed judgment), punitive damages of $5,000 for each victim, and tax court costs against Defendant.

Dated this the 27th day of June, 2016.

Respectfully submitted,

/s/ Gerald L. Miller
GERALD L. MILLER
Senior Trial Attorney
(AL Bar No. ASB-1454-E52G)
Telephone: 205-212-2047
Facsimile: 205-212-2047
gerald.miller@eeoc.gov

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Birmingham District Office
Ridge Park Place, Suite 2000
1130 22nd Street South
Birmingham, AL  35205

**CERTIFICATE OF SERVICE**

I hereby certify that on June 27, 2016, I filed the foregoing with the Clerk of the Court using the CM/ECF system which will electronically send notification of the filing to all attorneys of record.

DONE this 27th day of June, 2016.

/s/ Gerald L. Miller
Senior Trial Attorney